JESSICA K. PRIDE (SBN 249212)
jpride@pridelawfirm.com
DANTE PRIDE (SBN 262362)
dpride@pridelawfirm.com
ALFRED VON KESSLER IV (309453)
avk@pridelawfirm.com
THE PRIDE LAW FIRM
2831 Camino Del Rio S., Suite 104
San Diego, CA 92108
Telephone: (619) 516-8166
Facsimile: (619) 785-3414
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.P.,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA (FEDERAL BUREAU OF PRISONS); DOE LOPEZ; and DOES 1-25, inclusive,<br><br>        Defendants. | CASE NO. 4:24-cv-04292<br><br>**COMPLAINT FOR:**<br>  1. **Sexual Abuse;**<br>  2. **Gender Violence;**<br>  3. **Sexual Battery;**<br>  4. **Intentional Infliction of Emotional Distress;**<br>  5. **Negligent Infliction of Emotional Distress;**<br>  6. **Battery;**<br>  7. **Failure to Protect; and**<br>  8. **Negligence**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      Beginning in approximately July 2023, Defendant Doe Lopez ("LOPEZ"), a correctional officer at Federal Correctional Institution – Dublin ("FCI Dublin") owned and operated by Defendant the United States of America (Federal Bureau of Prisons) ("United States"), sexually assaulted and harassed Plaintiff L.P. ("Plaintiff"), a minimum-security inmate, in violation of federal and state law.

THE PRIDE
LAW FIRM

- 1 -
PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

2. Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to federal inmates. Under PREA, the U.S. Department of Justice promulgated detailed regulations that provide precise procedures that prisons must follow. The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

3. Defendant LOPEZ, an agent and employee of FCI Dublin, repeatedly subjected Plaintiff to sexual abuse and harassment. In doing so, Defendants violated Plaintiff's Constitutional rights and California law on gender violence, sexual assault, and common law on battery. Plaintiff brings this civil action and asserts claims: (1) against LOPEZ and DOES 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause; (2) against LOPEZ pursuant to various California common law torts and statutes;  and (3) against the United States under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 1671-2680) ("FTCA") for various tort claims committed by Defendants arising under California common law committed within the course and scope of their federal office or employment.

4. For these violations, Plaintiff seeks nominal, compensatory, and punitive damages, attorneys' fees and costs, and any other relief that the Court deems appropriate.

## JURISDICTION AND VENUE

5. Plaintiff's claims arise under the United States Constitution, California statutory law, California common law, and the FTCA. The Court has diversity jurisdiction over Plaintiff's entire action under 28 U.S.C. § 1332 because Plaintiff and Defendants are diverse in citizenship and more than $75,000 is in controversy. The Court also has federal question jurisdiction over Plaintiff's Constitutional claims and FTCA claims (which have been administratively exhausted) under 28 U.S.C. § 1331. And the Court has supplemental jurisdiction over Plaintiff's California statutory and common-law claims under 28 U.S.C. § 1367 because these state-law

claims arise from a common nucleus of operative fact with Plaintiff's federal question claims. The *Bivens* claims provide federal question jurisdiction as well.

6.    The Court also has personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants because, on information and belief, each Defendant is a citizen of, and domiciled in, California. The Court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b). As noted above, Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at FCI Dublin, located at 5701 8th St., Dublin, California 94568.

## INTRADISTRICT ASSIGNMENT

8.    Pursuant to Civil Local Rule 3-29(d), Plaintiff's action is properly assigned to the San Francisco Division of this District because the action arises from actions and omissions taken in Alameda County, California, where FCI Dublin is located.

## PARTIES

9.    Plaintiff is an individual and citizen of Yakima, Washington. During the relevant period, Plaintiff was incarcerated at FCI Dublin in Dublin, California.

10.    Upon information and belief, LOPEZ is an individual and citizen of California, where she is domiciled. During the relevant period, LOPEZ worked in the commissary at FCI Dublin in the BOP's employment. While performing the acts and omissions that Plaintiff alleges in this complaint, LOPEZ was acting within the scope of her official employment, or with the BOP's permission and consent.

11.    Defendant United States is a governmental entity. During the relevant period, the United States, through the BOP, a federal agency, was in possession and control of FCI Dublin, a minimum-security federal prison located in Dublin,

THE PRIDE
LAW FIRM

- 3 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

California. The United States has waived sovereign immunity as to Plaintiff's tort claims against Defendants, pursuant to FTCA, 28 U.S.C. § 2674.

12.    Plaintiff is ignorant as to the true names, identities, and capacities of Defendants DOES 1 through 25, inclusive. Therefore, Plaintiff sues these Defendants under the fictitious designation of DOES 1 through 25. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their liability.

13.    Defendants Does 1-25, individually and in their official capacities, at all times relevant herein, were correctional officers and/or employees for the BOP, acting in their official capacity. These defendants include correctional officers in supervisory positions that participated in training and other employees, and in reporting incidents of sexual abuse to the BOP.

## STATEMENT OF FACTS

**A.    PREA regulations provide mandatory procedures for preventing, reporting, investigating, and responding to reports of staff sexual abuse of an inmate**

14.    PREA regulations require the BOP to have a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the [BOP's] approach to preventing, detecting, and responding to such conduct," which the BOP has adopted.[1]

15.    PREA regulations also comprehensively mandate that the BOP and its correctional staff follow certain policies and procedures when an inmate has allegedly suffered sexual abuse.

16.    First and foremost, the BOP "shall require all staff to report immediately" "any knowledge, suspicion, or information regarding an incident of sexual abuse" and "staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."[2] "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse

---

[1] *See* BOP Program Statement No. 5324.11, at 15 (Jan. 6, 2014); 28 C.F.R. § 115.11(b), (c).
[2] 28 C.F.R. § 115.61(a).

report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions."[3]

17.    Regardless of whether a report of sexual abuse is made, if an inmate is "subject to a substantial risk of imminent sexual abuse, [BOP employees] shall take immediate action to protect the inmate."[4]

18.    Upon receiving a report of inmate sexual abuse, the facility is required to report it to a designated internal investigator[5] and conduct an administrative or criminal investigation.[6] A criminal investigation is required for all allegations of inmate sexual abuse, "unless the allegation does not involve potentially criminal behavior."[7] All such referrals must be documented.[8]

19.    Given the high risk for retaliation against a reporter or victim, the BOP is required to "protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff and shall designate which staff members or departments are charged with monitoring retaliation."[9] A prison's PREA compliance manager must monitor an inmate sexual abuse victim for 90 days after a report of abuse is filed to ensure that he or she is not retaliated against by prison staff.[10]

20.    The BOP must also provide ongoing access to mental healthcare to all inmates who have been victimized by sexual abuse while detained in the facility.[11]

21.    The BOP is required to train every employee who may have contact with inmates to comply with the above PREA regulations and must "document, through employee signature or electronic verification, that employees understand the training

---

[3] *Id.* § 115.61(b)
[4] *Id.* § 115.62
[5] *Id.* § 115.61(e)
[6] *Id.* § 115.22(a); *see also Id.* § 115.71
[7] *Id.* § 115.22(b)
[8] *Id.*
[9] *Id.* § 115.67(a).
[10] 28 C.F.R. § 115.67(c); BOP Program Statement No. 5324.11, at 44 (Jan. 6, 2014)
[11] *Id.* § 115.83(a), (b), (h).

- 5 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

they have received."[12] In addition to this general training, specialized training is required for sexual abuse investigators.[13]

22.    Where an investigation finds that a staff member has engaged in sexual abuse, the presumptive disciplinary sanction is termination, and some form of discipline is required.[14]

23.    Finally, all documentation relating to an allegation of inmate sexual abuse must be maintained[15] and securely retained for at least ten years after the date of initial collection.[16]

24.    Defendants repeatedly violated these PREA regulations.

**B.    Defendant LOPEZ routinely subjected Plaintiff to sexual abuse and harassment**

25.    Plaintiff began her time at FCI Dublin in approximately July 2023, and throughout her sentence she was subjected to an environment of abuse and discrimination. During that time, LOPEZ was employed at FCI Dublin in the commissary. Through her authoritative position over Plaintiff, unlawfully and in violation of her civil and constitutional rights, LOPEZ sexually abused her by conducting unauthorized strip searches/pat downs. The touching was unwelcome, offensive, and nonconsensual.

26.    During her incarceration at FCI Dublin, Plaintiff worked in the library. A correctional officer named Figueroa was her supervisor in the library. Figueroa and Defendant LOPEZ were married and worked at FCI Dublin together, against BOP policy.

27.    LOPEZ, who worked in the commissary, accused Plaintiff of wanting to have sexual relations with FIGUEROA and began retaliating against her. LOPEZ and FIGUEROA prevented Plaintiff's access to the commissary.

---

[12] *Id.* § 115.31.
[13] *Id.* § 115.34.
[14] *Id.* § 115.76.
[15] *Id.* § 115.87(a), (d).
[16] *Id.* § 115.89(a), (d).

- 6 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

28. Morgan Agostini, an administrative assistant at FCI Dublin, recruited Plaintiff to uncover drugs at the prison. Agostini used her position of authority to manipulate Plaintiff and promised her protection and rewards for working with Agostini. After uncovering some drug contraband within the prison, Agostini told Plaintiff that she was being sent to the Special Housing Unit ("SHU") for protection. Plaintiff was told she would be released from prison after her time in the SHU.

29. However, in approximately November 2023, Plaintiff was released from the SHU but not FCI Dublin. Instead, the retaliation, harassment, and sexual abuse of Plaintiff at FCI Dublin worsened.

30. LOPEZ began to conduct unauthorized strip searches of Plaintiff. LOPEZ brought Plaintiff into the chapel and patted her down. When nothing was discovered, Plaintiff and other inmates were required to strip down and the search continued. LOPEZ made Plaintiff stand naked while other inmates were searched. When it was Plaintiff's turn to be searched, she was instructed to turn around and expose every inch of her naked body multiple times. Plaintiff was forced to bend over and cough, as well as to spread the sides of her buttocks. During these searches, LOPEZ would threaten to return Plaintiff to the SHU. This occurred approximately four times.

31. LOPEZ was also physically violent with Plaintiff. She would regularly "shoulder check" Plaintiff, intentionally knocking her shoulder forcefully into Plaintiff's such that Plaintiff would be pushed back and feel physical pain.

32. Plaintiff was also routinely sexually harassed by various correctional officers, including some of the individuals identified as DOES 1-25, inclusive. These correctional officers would blatantly ogle her and make comments about her body, such as telling her, "You're so fit; let me see your workouts." Multiple times, these correctional officers offered to obtain gifts or other rewards for her. This was a common way that guards at FCI Dublin would attempt to gain the favor and trust of female inmates so that they could manipulate them into sexual activity. Plaintiff

consistently refused these offers, wanting to not violate FCI Dublin rules and fearing that the guards would expect sexual favors in return.

33.    Due to the ongoing harassment and sexual abuse to which Plaintiff was subjected, she completed multiple complaint forms. In October 2023, Plaintiff filed a BP-9 complaint form. Later, she completed a BP-10 and PREA complaint form as well. When Plaintiff sought to send the complaints out by mail, she was further harassed and retaliated against.

34.    LOPEZ searched Plaintiff's room on the day she was sending out her BP-10 complaint. LOPEZ opened and read the forms Plaintiff completed wherein she detailed the harassment she experienced first-hand from both LOPEZ and Figueroa. LOPEZ also took some of Plaintiff's belongings, including items she had purchased at the commissary like food, clothing, and hygiene products.

35.    Plaintiff was also denied proper medical care as retaliation.  Plaintiff made at least three requests to Agostini to see a health care provider, as she was suffering from pain in her uterus and menstruating for four months without cessation. Agostini denied her each time.  Agostini claimed it was an "insurance issue," but the BOP is required to provide medical care for all inmates in its care, regardless of whether they had health insurance when they began their incarceration.  Plaintiff was forced to wait until she was released from FCI Dublin to seek medical treatment; her gynecologist prescribed her medication to help with her condition.

**C.    FCI Dublin is known for its culture of tolerating sexual misconduct**

36.    Based on information and belief, throughout the last three decades, the United States has repeatedly ignored incidents of sexual misconduct at FCI Dublin. Currently, six employees have been indicted by the Department of Justice for sexual misconduct, five have pled guilty or been convicted, and nine other employees are on administrative leave pending investigation – the most in U.S. history of the Bureau

of Prisons. Twenty-five total were under investigation as of May 2022.[17] The following examples are just a fraction of the magnitude of sexual misconduct and violence that transpired at FCI Dublin:

- In 1996, BOP officers took three female inmates from FCI Dublin to a male unit, opened their cell doors, and allowed male inmates to rape them.

- In the late 1990's and early 2000's, four male BOP employees were either convicted or pled guilty to sexually abusing female inmates at FCI Dublin.

- According to the U.S. Senate Report,[18] in the early 2010's, approximately a dozen Dublin employees were removed for their sexual abuse of inmates, "including one who videotaped himself having sex with inmates and stored those tapes in a prison locker. None were arrested."

- In 2019, an FCI inmate, Victoria Peterson, filed a suit against Officer William Martinez for abusing his power and using excessive force to have sex with her. She also sued the warden at the time, Wiley Jenkins, for failing to take disciplinary action against Martinez and allowing him to continue working at FCI Dublin.

- In 2019, inmate L.I. filed a claim against former FCI Dublin chaplain James Highhouse for sexual assault. Highhouse started having unwanted physical contact with L.I. in May of 2018, and although he was ultimately charged with abuse of L.I., prosecutors said he engaged in predatory conduct with at least six women from 2014 to 2019. Highhouse pleaded guilty and was sentenced to seven years in prison.

---

[17] See Lisa Fernandez, 25 Dublin prison employees under investigation for sex, drug, lying abuses, KTVU (May 5, 2022), https://www.ktvu.com/news/25-dublin-prison-employees-under-investigation-for-sex-drug-lying-abuses.

[18] JON OSSOFF & RON JOHNSON, S. REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the permanent subcomm. on investigations December 13, 2022 hearing).

THE PRIDE
LAW FIRM

- 9 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

- Between approximately June of 2020 and September of 2020, inmate A.R. witnessed Klinger's sexual relationship with another inmate. She witnessed Klinger take women into a hidden areas to have sex with him. Klinger and CO Jaime Perez spoke with sexually explicit language toward A.R. CO Perez would bump up against her and grab her breasts. Officer Perez also took photos of A.R.

- Between approximately August 2020 and November 2020, inmate D.V. was pressured into an ongoing sexual relationship with FCI Dublin Correctional Officer Enrique Chavez. CO Chavez kissed her, touched her bare breasts and vagina, and had D.V. touch his penis. CO Chavez was known to bring inmates into the kitchen closet for "meetings."

- In 2021, CO Chavez sexually harassed another inmate, J.C., while was working in the kitchen. CO Chavez would brush his erect penis up against J.C. and said "look, it's hard for you." CO Chavez was charged with abusive sexual contact of a prisoner in violation of 18 U.S.C. § 2244(a)(4). He pled guilty to the conduct and was sentenced to 20 months in prison.

- Another inmate, A.J., suffered sexual abuse at FCI Dublin between approximately September 2021 and May of 2022. When A.J. arrived, Paramedic Fraser Cohen grabbed her breasts with no chaperone. Later throughout her incarceration, CO Nicholas Ramos consistently watched her in the shower, and both CO Ramos and CO Phillips made her strip, cough, and squat for cavity searches.

- From April through October 2020, Klinger manipulated inmate M.R. into performing oral sex and engaging in forced sexual intercourse.

- Saucedo watched inmate A.J. in the shower on multiple occasions. Saucedo ripped open the shower curtain while inmate L.C. was showering, causing her to fall over so he could see her naked body.

- 10 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Saucedo also sexually harassed L.C. by making sexual noises at her and squirting shampoo on her clothing, mimicking ejaculation. Additionally, inmate L.A. was sexually harassed by Saucedo when he forced her to bend over in front of him.

- Inmate D.S. was forced to engage in oral sex with nurse Jeff Wilson. Jeff Wilson also forced inmate L.A. to show him her breasts.

- Another inmate went to TDY (temporary duty) medical employee Jay Alexander (exact name unknown) for medical treatment on her back, and he pulled her underwear down and touched her buttocks and in between her inner thighs.

- Inmate G.M. was preyed upon by Disciplinary Hearing Officer (DHO) David Perez for over three years. David Perez would "make out" with G.M., touch her breasts, caress her, and make her believe he was her boyfriend. When G.M. was on probation, David Perez met up with her and had her touch his genitals.

- Another kitchen foreman, O'Connor (full name unknown) touched inmate N.P.'s buttocks and brushed his hand over her chest.

- CO Jones would tell inmate J.C. to "suck his dick" and he would tell her to "Get on your knees." CO Jones would grab his genitalia and tell her to "look."

37. Upon information and belief, at least 25 FCI Dublin employees, including those who courageously reported and/or acted to prevent instances of sexual violence, have been reassigned to other prisons. This reassignment got the attention of Congresswoman Jackie Speier, who wrote a letter to the new Director of the Federal Bureau of Prisons, Colette Peters, requesting information about FCI Dublin's "culture of rampant sexual misconduct and subsequent cover-ups."[19]

---

[19] KTVU Fox 2 Reporter Lisa Fernandez: https://www.ktvu.com/news/dublin-prison-guard-says-she-was-forced-out-for-reporting-abuse

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

38.     In the Federal Bureau of Prison Annual PREA report for calendar year 2021, BOP director Michael Carvajal wrote this summary of staff on inmate sexual misconduct for BOP facilities:

VI. Staff-on-Inmate Incident-Based Assessment: Data for this category is provided in aggregate form in the below table. Staff incidents are received, assessed, and processed by the Office of Internal Affairs. Thus, facility security-level is not noted, and only the year-end totals are provided in this report. During CY2021, there were no substantiated cases in this category. Please note that investigative cases must be closed prior to inclusion in this report. This report encompasses cases that were closed by March 31, 2022.

| Facility | Number of Allegations | Number of Substantiated Cases | Ongoing Investigative Cases |
|---|---|---|---|
| BOP | 315 | 0 (0%) | 237 |
| Residential | 25 | 0 (0%) | 12 |

39.     Thus, according to Carvajal, for the calendar year 2021 data collection period which encompassed 106 BOP facilities, there were zero substantiated cases of staff on inmate sexual abuse.

40.     Every three years, BOP is required to audit each facility to determine compliance with PREA standards. 28 C.F.R. 115.401(a).

41.     A PREA Audit Report for FCI Dublin was completed and signed on June 14 2017.

42.     That report found that FCI Dublin met or exceeded PREA standard.

43.     The next final PREA audit report was March 12, 2022.

44.     The 2022 audit report claimed that FCI Dublin was fully compliant with all 45 PREA standards.

THE PRIDE
LAW FIRM

- 12 -
PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

45.    The audit was completed after Warden Ray Garcia had been "walked out" of FCI Dublin for his repeated sexual abuse of inmates.

46.    In December 2022, the United States Senate reported on the Permanent Subcommittee on Investigations findings from its investigation into sexual abuse of female prisoners in custody of the BOP. The report found that in at least four BOP facilities (FCI Dublin being one of them), multiple women endured ongoing sexual abuse for months or years. The report's conclusion stated, "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms. Moving forward, BOP should consider the Subcommittee's findings as it works to implement changes to how it handles sexual abuse of female prisoners by male BOP employees."[20]

47.    Warden Garcia was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact and one count of lying to the FBI. Garcia was sentenced to 5 years and 10 months in prison. Former CO Ross Klinger pled guilty to federal criminal charges for Sexual Abuse of a Ward (18 U.S.C. § 2243(b)) stemming out of his conduct against two other inmates and he is awaiting sentencing scheduled for December 13, 2023. A federal jury convicted CO John Bellhouse of five counts of sexually abusing female inmates. Additionally, in March of 2022, CO Sergio Saucedo and CO Nicholas Ramos were placed on leave as a result of sexual misconduct allegations. CO Ramos committed suicide on August 21, 2022.

---

[20] JON OSSOF & RON JOHNSON, S.REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the Permanent Subcomm. on Investigations December 13, 2022 hearing).

THE PRIDE
LAW FIRM

- 13 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

48.     Defendant United States failed to provide the sexual abuse victims with counseling services or victim advocates. The victims were retaliated against with interviews and examinations after filing their Federal Tort Claims. As a result of reporting the misconduct, the victims were put in the Solitary Housing Unit (SHU), received daily room tosses, and were placed on lock downs. The victims also had their phone calls and visitations taken away, their legal mail was read, and their legal phone calls were monitored.

49.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent, servant, and employee of the remaining Defendants, and at all times herein mentioned, each was acting within the time, place and scope of employment of other Defendants. At all material times, all of the Defendants aided, abetted, authorized, and ratified all of the actions of all of the other Defendants. Plaintiff is informed and believes, and based thereupon alleges, that at all material times, Defendants, and each of them, were the agents, employees, managing agents, supervisors, coconspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants. Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly and severally.

## **FTCA ADMINISTRATIVE EXHAUSTION**

50.     Plaintiff has exhausted these claims against the United States under the FTCA.

51.     Plaintiff submitted a "Claim for Damage Injury, or Death" to the BOP for "permanent injuries, mental anguish, embarrassment, humiliation, pain, distress,

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

and damages" as a PREA victim involving staff at FCI Dublin in the sum of $10,000,000.00.

52. The BOP received her administrative claim on April 8, 2024.

53. On July 15, 2024, the BOP denied her administrative claim. Thus, pursuant to 28 U.S.C. § 2675(a), Plaintiff has exhausted her administrative remedies and this Complaint is timely filed.

## **CLAIMS FOR RELIEF**

## **CLAIM ONE**

## **EIGHTH AMENDMENT, CRUEL AND UNUSUAL**

## **PUNISHMENT – SEXUAL ABUSE**

## **(Against LOPEZ and DOES 1-25, inclusive)**

54. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

55. Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against LOPEZ and DOES 1-25, inclusive.

56. At all material times, LOPEZ and DOES 1-25, inclusive, were federal employees of the BOP at FCI Dublin, acting under the color of federal authority with respect to the allegations in this complaint.

57. LOPEZ violated Plaintiff's right to be free from cruel and unusual punishment by repeatedly sexually and physically abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

58. LOPEZ's sexual and physical abuse of Plaintiff occurred under coercive circumstances.

59. By intentionally subjecting Plaintiff to sexual and physically violent acts, LOPEZ acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

60. The inhumane conditions of confinement caused by LOPEZ's repeated sexual and physical abuse caused Plaintiff severe physical, mental, and emotional harm.

61. LOPEZ and DOES 1-25, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

62. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

63. Plaintiff makes these allegations against DOES 1-25, inclusive.

**CLAIM TWO**

**GENDER VIOLENCE (Civ. Code § 52.4)**

**(Against LOPEZ and DOES 1-25, inclusive)**

64. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

65. Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against LOPEZ and DOES 1-25.

66. Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

67. LOPEZ discriminated against Plaintiff based on her female gender when she repeatedly sexually and physically abused her, by subjecting her to sexual acts and physical violence, under the coercive conditions that were present between them.

68. LOPEZ's actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA

regulations and BOP policy prohibiting sexual abuse, that she could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

69. By repeatedly subjecting Plaintiff to sexual acts and physical violence, LOPEZ caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

70. LOPEZ acted with malice and oppression and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

71. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

72. These allegations are asserted against DOES 1-25, inclusive.

73. Plaintiff also seeks attorneys' fees and costs, as expressly authorized by statute.

### CLAIM THREE

**SEXUAL BATTERY (FTCA, Civ. Code § 1708.5)**

**(Against UNITED STATES, LOPEZ, and DOES 1-25, inclusive)**

74. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

75. Plaintiff brings this claim for sexual assault under FTCA and California Civil Code § 1708.5 against UNITED STATES and LOPEZ. The UNITED STATES ratified the conduct of LOPEZ.

76. LOPEZ violated Plaintiff's statutory right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

77. LOPEZ's sexual abuse of Plaintiff occurred under coercive circumstances.

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

78. For these reasons, LOPEZ's sexual abuse of Plaintiff, an inmate in the custody of her employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

79. Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, LOPEZ must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

80. Plaintiff did not and could not consent to the touching.

81. By intentionally subjecting Plaintiff to sexual acts, LOPEZ acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

82. LOPEZ's actions and judgment in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that she could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

83. By repeatedly subjecting Plaintiff to sexual acts, LOPEZ caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

84. LOPEZ acted with malice and oppression, and her conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

85. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (against individuals only).

86. All these allegations are asserted against DOES 1-25, inclusive.

THE PRIDE
LAW FIRM

- 18 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

## CLAIM FOUR

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (FTCA, California common law)

### (Against UNITED STATES, LOPEZ, and DOES 1-25, inclusive)

87.   Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

88.   Plaintiff brings this claim for intentional infliction of emotional distress under FTCA / California common law against UNITED STATES and LOPEZ The UNITED STATES ratified the conduct of LOPEZ.

89.   LOPEZ engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual and physically violent acts while she was incarcerated as an inmate in his employer's custody. LOPEZ abused her authority over Plaintiff and their power to affect her interests in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

90.   Plaintiff did not and could not consent to the touching by LOPEZ.

91.   LOPEZ's sexual and physical abuse caused Plaintiff to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

92.   LOPEZ intended to cause Plaintiff this emotional distress because he knew that emotional distress was certain to result from her sexual manipulation and violent abuse of an inmate.

93.   LOPEZ's actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that she could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

94.   LOPEZ acted with malice and oppression, entitling Plaintiff to punitive damages.

95.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (against individuals only).

96.     These allegations are asserted against DOES 1-25, inclusive.

## CLAIM FIVE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (FTCA, California common law)

### (Against UNITED STATES, LOPEZ, and DOES 1-25, inclusive)

97.     Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

98.     Plaintiff brings this claim against the UNITED STATES, LOPEZ, and DOES 1-25, inclusive, under the FTCA based on the actions and/or omissions of UNITED STATES, LOPEZ, and DOES 1-25, inclusive, which were taken while working at FCI Dublin in their capacity as employees of the BOP and acting within the scope of their employment, with United States' permission and consent.

99.     At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

100.    **Duty**. United States, UNITED STATES, LOPEZ, and DOES 1-25, inclusive, had a special, heightened, custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse. PREA regulations and BOP policy prohibiting sexual abuse confirm this special and heightened duty.

101.    **Breach of duty—inadequate supervision**. The United States, UNITED STATES and DOES 1-25, inclusive, failed to supervise and operate FCI

- 20 -

Dublin in a manner that would have prevented LOPEZ's ongoing sexual abuse of Plaintiff.

102.   The United States did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

103.   LOPEZ's sexual and physical abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States and DOES 1-25.

104.   **Injuries and relief sought**. United States, LOPEZ, and DOES 1-25, inclusive, actions and omissions caused Plaintiff to suffer, and continue to suffer, serious and severe emotional distress, including fear, depression, and anxiety, because of being repeatedly sexually abused.

105.   Plaintiff's emotional reaction was not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the emotional distress caused by being sexually abused by a correctional officer, who had a duty to protect her from such abuse. Plaintiff's distress was of such a substantial and enduring quality that no reasonable person in a civilized society should be expected to endure it.

106.   By reason of the United States and LOPEZ's negligent infliction of emotional distress, Plaintiff has suffered severe emotional distress and will continue to suffer severe mental and emotional anxiety and distress.

107.   Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

108.   These allegations are asserted against DOES 1-25, inclusive.

## CLAIM SIX

### BATTERY (FTCA, California common law)

### (Against UNITED STATES, LOPEZ, and DOES 1-25, inclusive)

109.   Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

110.   Plaintiff brings this claim for battery under FTCA and California common law against UNITED STATES, and LOPEZ. The UNITED STATES ratified the conduct of LOPEZ.

111.   LOPEZ committed battery against Plaintiff by repeatedly sexually and physically abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

112.   LOPEZ's sexual and physical abuse of Plaintiff occurred under coercive circumstances.

113.   For these reasons, LOPEZ's sexual and physical abuse of Plaintiff, an inmate in the custody of her employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

114.   Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, LOPEZ must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

115.   By intentionally subjecting Plaintiff to sexual acts, LOPEZ acted maliciously in a manner that is deeply offensive to human dignity and void of any penological justification.

116.   LOPEZ's actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse and physical violence, that she

could not have been making a policy judgment in her decision to sexually and physically abuse Plaintiff.

117. By repeatedly subjecting Plaintiff to sexual acts and physical violence, LOPEZ caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

118. LOPEZ acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

119. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (only against individuals).

120. These allegations are asserted against DOES 1-25, inclusive.

## CLAIM SEVEN

## EIGHTH AMENDMENT, DELIBERATE INDIFFERENCE – FAILURE TO PROTECT

## (Against LOPEZ, and DOES 1-25, inclusive)

121. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

122. Plaintiff brings this claim against LOPEZ and DOES 1-25, inclusive, under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

123. At all material times, LOPEZ and DOES 1-25, inclusive, were federal employees, acting under the color of federal authority with respect to the allegations set forth above.

124. LOPEZ and DOES 1-25, inclusive, deprived Plaintiff of her right to be free from cruel and unusual punishment by failing to protect her from a substantial

risk of serious harm from sexual abuse by LOPEZ, by acting in conscious disregard of that known risk.

125. Prior to Plaintiff's sexual abuse, DOES 1-25 had knowledge of prior abuses occurring at FCI Dublin and did nothing to stop it, including failing to conduct an investigation, among other things. DOES 1-25 had a legal duty to investigate complaints of abuse. Despite knowledge of abuse, DOES 1-25 did not investigate any of the complaints. This failure caused and was a substantial factor in allowing abuses to continue to occur to inmates, including Plaintiff. DOES 1-25 consciously allowed inmates, including Plaintiff, to be abused.

126. Based on her position and behavior in the prison, DOES 1-25 knew or should have known that LOPEZ was abusing Plaintiff.

127. DOES 1-25, inclusive, failed to take immediate action to protect Plaintiff, including by separating her from LOPEZ, in violation of 28 C.F.R. § 115.62.

128. LOPEZ and DOES 1-25, inclusive, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable officer in the circumstances would have appreciated the obviously high degree of risk involved.

129. LOPEZ and DOES 1-25, inclusive, therefore acted with deliberate indifference to substantial risk of sexual abuse in violation of the Eighth Amendment, subjected Plaintiff to dangerous and debasing conditions of confinement, including sexual abuse, and violated her fundamental rights to safe and humane confinement. This cruel and unusual punishment caused Plaintiff physical, mental, emotional, and constitutional injuries.

130. LOPEZ's and DOES 1-25 purposefully denied Plaintiff protection from the known and substantial risk of serious harm of sexual abuse.

131. LOPEZ's and DOES 1-25's, inclusive, deliberate indifference was malicious, oppressive, reckless, and callous, entitling Plaintiff to punitive damages.

132. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM EIGHT

### NEGLIGENCE (FTCA, California common law)

### (Against the UNITED STATES, LOPEZ, and DOES 1-25, inclusive)

133. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

134. Plaintiff brings this claim against the United States, LOPEZ, and DOES 1-25 under the FTCA and California common law based on the actions and/or omissions of United States, LOPEZ, and DOES 1-25, inclusive, taken while working at FCI Dublin in their capacities as employees of the BOP and acting within the scope of their employment, with the permission and consent of the United States.

135. At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

136. **Duty**. United States, LOPEZ and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

137. The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

138. Alternatively, United States, LOPEZ, and DOES 1-25, inclusive, had a general duty of care to Plaintiff.

THE PRIDE
LAW FIRM

- 25 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

139. LOPEZ's sexual and physical abuse of Plaintiff was reasonably foreseeable to the United States because LOPEZ's conduct made it obvious they were sexually and physically abusing Plaintiff.

140. **Breach of duty—inadequate supervision**. The United States and DOES 1-25 failed to supervise and operate FCI Dublin in a manner that would have prevented LOPEZ's ongoing sexual abuse of Plaintiff.

141. The United States did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

142. LOPEZ's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States and DOES 1-25.

143. **Injuries and relief sought**. Plaintiff suffered a physical violation, a violation of her liberty interest in being free from sexual abuse, injury from being denied freedom of movement and programming, and severe mental and emotional anxiety and distress, and will continue to suffer severe mental and emotional anxiety and distress in the future.

144. Plaintiff seeks the following relief for her injuries: non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1.    Nominal damages in an amount to be determined at trial;

2.    Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain,

THE PRIDE LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

3.    Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights (except against United States);

4.    An award to Plaintiff of reasonable costs; and

5.    An award to Plaintiff of reasonable attorneys' fees pursuant to 28 U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

6.    Such other and further relief as the Court may deem fit and proper.


Respectfully Submitted,


Dated: July 17, 2024                              **THE PRIDE LAW FIRM**

/s/ Jessica K. Pride
Jessica K. Pride
Email: jpride@pridelawfirm.com
Attorneys for Plaintiff

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL